Thank you. May it please the court. My name is Paul Zimmer. I represent the plaintiff's appellants in this case who are individuals who had their properties foreclosed upon for unpaid taxes, the sales of which generated substantial surplus funds, money which the defendants have refused to return. The district court in this case dismissed plaintiff's claim brought directly under the federal constitution's fifth amendment's takings clause on the basis that a section 1983 claim was of equal effectiveness, but it's black letter law that a 1983 claim cannot be brought against a state like Wisconsin. The district court ultimately should not have even reached that question in the first place because the district court had not satisfied itself of the premise that plaintiffs had no state law vehicle to vindicate their rights under the takings clause. Here, plaintiffs have a state law vehicle to vindicate their rights through the Wisconsin constitution's takings clause. Now the defendants dispute that contention by raising various procedural defenses and faced with that dispute over whether there was a state law vehicle, the district court should have either addressed that state law issue first as the U.S. Supreme Court held in DeVillier, it's not appropriate to address a claim brought directly under the fifth amendment unless the court is first satisfied that there's no adequate state law vehicle, so the district court should have addressed that first or, as we suggested, abstain from deciding that issue, allow the state courts to resolve whether there was a state law vehicle, and only if the federal constitutional question was not mooted by those state proceedings, then answer the federal constitutional question directly under the fifth amendment. Mr. Zimmer, given the fact that there is this state law vehicle, why shouldn't we just follow the approach of the Supreme Court in DeVillier and just say, you know what, remand it to the state court so that they can pursue their state court, their claim in state court? I mean, that's what the Supreme Court did, right? And so why shouldn't we do that? Well, essentially, that's what we're asking for, but will we, I guess... No, no, but the Supreme Court didn't say, you know, that the district court should abstain or that we should abstain. The Supreme Court said, Justice Thomas said, remand. The difference here, Your Honor, is that in the DeVillier case, the state of Texas acknowledged and conceded that the plaintiffs in that case could bring their state law vehicle. They actually discussed that oral argument that the plaintiffs on remand would be allowed to amend their pleading to bring that state law vehicle. But don't you have that same right under Zinn? Didn't the Wisconsin Supreme Court say that where there's an alleged taking that the claimant can proceed directly under the Wisconsin Constitution? So it doesn't seem like there's a question that at least there's an avenue for you to assert a claim for just compensation under the Wisconsin Constitution. I mean, the availability of a state law vehicle doesn't require that you be victorious in state court. It just means that the state has provided a way for you to try to vindicate your rights by asserting a claim. We agree, Your Honor, that there is a state law vehicle under the Zinn case. The distinction here and why abstention would be appropriate here and why this case is different than DeVillier is that the state and the counties reject the premise that Zinn provides a vehicle. For example, the state is arguing that sovereign immunity under the Wisconsin Constitution prevents the Zinn vehicle. And we believe that that's clearly wrong. The Zinn case held that a takings claimant can go directly under the Wisconsin Constitution and that the Wisconsin Constitution's takings clause is a self-executing waiver of sovereign immunity under the Wisconsin Constitution. And so, again, we think the state law vehicle is there, and it's very clear. The defendants are the ones who are saying, no, that state law vehicle isn't here. And that's where you have a situation where that question of state law is in dispute in this case. And so our point is the district court could have either resolved that first or, we think, given the principles of comity that are cited in the DeVillier decision, it would make sense to remand to the state court to allow the state court to resolve that question. And then if the state court resolves that question in our favor and we have a state law vehicle under Zinn, then we move forward in state court on our takings claim. If not, then we would come back and we'd have that backstop of a direct cause of action under the Fifth Amendment, and we'd be presented in federal court with that question that was left open in DeVillier as to whether a party having no other state law vehicle, no other vehicle available to them, can pursue a claim under the Fifth Amendment directly. And if your claims are time barred, though, that doesn't get you very far, correct? Well, I would argue, Your Honor, that it depends, I guess, on what basis we're time barred. If ultimately the federal constitutional claim, if this court holds that it's just a 1983 statute of limitations, then what that means is that the 1983 claim here is not available. And so you'd be left, again, with the question of, okay, well, if the 1983 claim is not available, then we still have to decide, is the direct action under the Fifth Amendment available? But, again, availability doesn't mean that it doesn't equate to you winning. Availability means you have an opportunity to assert your claim, right? I haven't seen a case where they said availability equals winning. And we're not – I don't think we're disagreeing with that, Your Honor, because what we're saying is ultimately if the merits question of the takings claim goes forward, let's say that goes forward in state court. Or whether a statute of limitations from a defense bars the claim. I mean, those are things that you would have to deal with, but still you have the ability to assert that claim. So the question of what statute of limitations applies to a claim brought directly under the Fifth Amendment, we believe is a question of what state law governs. What analogous state law would govern that claim? That's what the Fulton Court decided in the 11th Circuit, and that's generally the way that federal courts approach a claim under federal law where there's no stated statute of limitations. And so if it's true that under analogous state law the claim is time barred, then that time bar would apply both under the Wisconsin Constitution and under the direct claim under the Fifth Amendment. Our position on that issue is that it's not time barred because what we're talking about here is the return of money that belongs to the plaintiffs. The government's holding on to it. So I think we understand the substantive arguments with regard to the statute of limitations, but let me get back to something. So let's say the case is remanded. You go to state court. The state argues that sovereign immunity bars any Wisconsin claim against under the Wisconsin Constitution, and so the court should dismiss for lack of jurisdiction. So then that would be a dismissal. Would that dismissal preclude you from bringing a future federal claim based upon the fact that the state court has now determined that you can't bring a state constitutional claim? Is it a matter of claim preclusion, or do you think that sovereign immunity would result in a dismissal without prejudice so that you still would be able to assert your federal claim? I believe that we would still be able to assert our federal claim under those circumstances. And then if so, why don't we just do what the Supreme Court did in DeVilliers, which is remand to the state court, and then they can raise that argument with the state court. If state court disagrees, then under your premise you can come back to federal court. Well, my concern with that approach, rather than doing the approach that we've asked for, which is abstention, meaning staying the federal claims and allowing us to come back in this case, my concern would be that the statute of limitations might run while we're litigating the state case. So I think it's more appropriate to stay the federal case, allow us to pursue in state court whether or not we have that state law vehicle, and if we don't and we get dismissed on the grounds of state sovereign immunity under the Wisconsin Constitution, then the answer to the question of whether we have a state law vehicle decided by the state court will have been no. And then we would come back to the federal court, and we'd be able to pursue our federal claim, and the court would be presented with the question that was left open in DeVilliers of, is there a claim directly under the federal constitution when there's no state law vehicle available to the plaintiff? Let me take it in a slightly different direction. Suppose we agree with you that your 1983 claims are not untimely, and we take some of your points about there are a lot of different accrual dates that could be operational here, and the district court really focused on only two of them. Suppose we agree with you on that, what happens to the state case? I think what would happen, I don't know that that decision would necessarily change what would happen in the state case. You know, the state case is proceeding forward, and there's been arguments about the statute of limitations and state sovereign immunity, notice of claim statutes, we've been litigating those issues. But what guidance would we give the district court? Because there would be a remand to the district court under those circumstances, but then it would be facing the prospect of now finally a parallel proceeding. I think it would be appropriate for the district court in that circumstance to exercise abstention and allow us to go forward under our state law claims, and if we lose in the state court on some procedural roadblock like state sovereign immunity, then we would be able to still come back to the federal court, and our federal court will have been timely based on this court's decision about the accrual of the statute of limitations, and then that claim could go forward. Can you cite some authority that says that the expiration of a statute of limitations is grounds for a federal court to abstain from exercising the jurisdiction that it has over a federal claim? I mean, it seems like the main reason that you want the district court to abstain is because of the statute of limitations, but that seems like, for lack of a better word, that seems like a plaintiff problem, not a federal court problem. I guess I disagree with the premise that the main reason why we are asking for abstention is based on the statute of limitations. I think the reason why abstention makes sense here is because there are procedural roadblocks in the form of state sovereign immunity, and in the case of the counties in the city of Milwaukee, a notice of claim or notice of injury statute that they're saying means we have no state law vehicle at all. And the statute of limitations question could be decided theoretically, I guess, by either the federal court or the state court, because under state law, that's going to be the statute of limitations there, and under a direct claim under the Fifth Amendment, the appropriate statute of limitations would be whatever an analogous state law statute of limitations is. So I don't particularly see the need to abstain so that the state court can address the statute of limitations question. I mean, there's reasons why it might make sense. I mean, it's a question of state law. But I see the procedural roadblocks in sovereign immunity and the notice of claim statute that the defendant cite as more the reason, the ability to answer whether or not there's a state law vehicle. I do want to point out that this court in an abstention case has cited to DeVillier for the principle of comity that the state courts are co-responsible for upholding the Constitution. That was the Antosh versus Village of Mount Pleasant case that's cited in the briefs. That same principle of comity has been cited in other abstention cases by this court, specifically the Courthouse News Service versus Brown case, as well as the J.B. versus Woodard case. And ultimately, while we acknowledge in our briefing that this case doesn't fit squarely under any particular abstention doctrine exactly, I think it's closest to Pullman abstention. But you didn't argue Pullman abstention below, did you? Well, we did cite to Pullman, and we cited to all the abstention doctrines, and we argued that, you know, I guess what I want to clarify is the reason it's not exactly Pullman is we're not talking about the constitutionality of a state statute and saying, let's let the state court interpret it, because depending on the interpretation, the constitutionality question might be mooted. Here we have a federal constitutional question in a direct cause of action under the Fifth Amendment where questions of state law about whether there's a state law vehicle available under the takings clause, that's the question of state law, that if that gets determined in our favor, then there's no reason to ever address the federal claim under the Fifth Amendment. And so it still moots the constitutional question, and that's closest to Pullman abstention. Just a threshold question on jurisdiction. Your clients, if I'm right, have claims directly against about six of the counties. If they're not an adequate representative, an adequate class representative, is there any jurisdiction regarding the other counties? The jurisdiction against the other counties would depend on either this court for using the juridical link doctrine that we've cited or under Payton, and the juridical link is that if we go under Payton and we say, okay, the juridical link doctrine is alive, then don't they still have to be adequate class representatives? I think that would be a question at class certification, and we would argue that they are adequate class representatives because the claims are exactly the same. I mean, ultimately, the merits claims in this case are very easy. I mean, we have public records saying how much was your tax debt, how much did your property sell for. Simple math. What is the difference and what's the surplus proceeds? The counties operated all in the same way. They all did essentially the same process. So I would think that somebody with a claim against Oconto County or against Trempealeau County would have a claim just as much as anyone else, and they'd be exactly the same. Wouldn't we have to look at the statute of limitations, too? And if your clients have issues there, that might not be the same for other class members. Well, I think that's a question for class certification. And, for example, what we argued in the state court recently on a motion to dismiss was that ultimately the state court should deny the motion to dismiss and can do that without resolving whether the six-year statute of limitation applies for the wrongful taking of property or whether there's no statute of limitations that applies such that we can go back all the way to 1989. And what we said is that's a matter for class certification. And if the court finds that the six-year statute of limitation applies, then we define the class as ending after those six years. I do see I'm into my rebuttal time. I did want to make just one final point. There's another procedural avenue for this court, which is it could reverse on abstention and retain jurisdiction over this appeal on the federal constitutional question and allow the state court proceedings to proceed and then come back to this appeal instead of having the plaintiffs come back to the district court. One of the cases we cited is called City Investing Company v. Simcox. And in my preparation for oral argument, there was a similar situation there where this court had affirmed an abstention decision, but because the district court had reached the merits of the constitutional question as an alternative basis for its holding, this court decided to just retain jurisdiction over the appeal. And I think that's similar to the situation we have here where the district court has already answered the federal constitutional question. So if this court wanted to, it could order abstention but retain jurisdiction over the appeal and reserve deciding whether the district court was correct under the federal constitutional question and just resolve that in the first instance only if necessary following the state court proceedings. So unless there's other questions on that, I'd like to reserve my minute for rebuttal. Mr. Zimmer, with regard to which statute of limitations applies, why doesn't Bienemann control here? So the Bienemann case, I believe, is not on solid footing because Bienemann held that there is a direct cause of action under the Fifth Amendment, which we would agree with. I think Bienemann held that there could be. Well, I guess we'd have to look at the exact language. But my understanding of Bienemann is that it said something to the effect that we know from First English that there is a direct cause of action under the Fifth Amendment. That's how I read First English as well. But subsequent to that, the Supreme Court in De Villiers, faced with that exact argument, said we've never decided whether there's a direct cause of action under the Fifth Amendment. And so the premise... What about the statute of limitations? The statute of limitations issue, I think Bienemann just got it wrong because rather than applying the rule that when there's no statute of limitations stated on a federal claim, you look to state law for an analogous statute of limitations. That's the rule that I think Bienemann should have applied. But instead, Bienemann, essentially for judicial economy, said, well, it's the same as 1983. And I think the effect of that, as interpreted by the district court in this case, was essentially saying there really is no direct cause of action. It's essentially just a 1983 claim. I see my red light is on, so unless there's other questions, I'll take a seat. We'll give you a little time when you return. Okay, thank you. All right, we welcome Mr. Thome. Good morning, Your Honors. May it please the court, Attorney Matthew Thome on behalf of the Wisconsin counties. Judge Lee, I'd like to start by responding to the first question you asked, which is why shouldn't this court just follow what the Supreme Court did in DeVilliers and remand? And I think there's a couple of important points here. I think when the Supreme Court talked about remand in DeVilliers, they were just talking about remanding the case that had been brought up to the U.S. Supreme Court for the question that was presented in that case. And the question that was presented in that case is, if there is no other cause of action through which a plaintiff can pursue a takings claim, is there a direct cause of action under the U.S. Constitution? So when the U.S. Supreme Court ruled in DeVilliers, it wasn't about state versus federal. It was about, is there a direct cause of action under the U.S. Constitution if there is no other way in which a plaintiff could pursue their claims? That's not what we have here. And I would submit that at least with respect to the counties, as well as the city of Milwaukee, plaintiffs have created the problem that they're asking this court to fix through abstention, and that is by refusing to use the cause of action that was available to them to sue municipal entities, which is Section 1983. And this court has said multiple times that when 1983 is available as a cause of action through which to pursue your federal constitutional claims, that's your avenue. That's essentially Newman talking about how plaintiffs can't, through the facile expedient of avoiding reference to Section 1983, avoid the strictures of 1983. And we submit that's exactly what has happened here. Counsel, do we need to reach that issue if we find that the claims are time-barred, would be time-barred? I actually don't think you necessarily need to reach that issue because Bienemann controls the entire question of statute of limitations in this case. And if the claims are time-barred and the plaintiffs, the named plaintiffs, aren't adequate class representatives, then do we even have jurisdiction for the counties that they don't have direct claims against? So I think generally the way that this works is if you dismiss a case as to the named class representatives, plaintiffs generally need to be coming forward with new class representatives. So, yes, I would agree with you that that would be the case. And at that point there would not be subject matter jurisdiction unless the plaintiffs could identify new class representatives to proceed with the claims. I know we touched on this briefly in our district court briefing. I don't think it was addressed in any of the briefing to this court. But there are cases from this court talking about the procedure to be used when named class representatives are dismissed and how that affects proceedings going forward. And our position has been there are no named class representatives who've brought timely claims. And, therefore, this case should be dismissed. So I take it the corollary to that is that we do have jurisdiction over the named plaintiffs and the counties that impacted them, right? And so we can adjudicate the viability or availability of the 1983 claim and any other claim with regard to those parties, right? And I guess I just want to make sure, kind of building upon what Judge Kohler said, assume for present purposes that we believe that we agree with you and say that those claims are not viable, right? So then the case would basically go away unless subject matter jurisdiction could be established. But that ruling would have no preclusive effect on the other counties, right? Because they're not parties to the case. I would say, I mean, unless you're applying the juridical link doctrine and saying that these particular plaintiffs do, in fact, have claims against all those other defendants. But how would the juridical link doctrine come into play? Well, if it does come into play, if they're not adequate class representatives, then Peyton doesn't apply, correct? I would say that that's correct. So if the question is, is there claim preclusion as to all of the other counties if the court's ruling is these particular plaintiffs' claims are time barred, I would say there's certainly claim preclusion to the extent these plaintiffs sue those other counties. Again, I doubt that would happen, but I don't know that it would apply if they came forward with a plaintiff who had timely claims. I'm not quite sure that's true because then you're talking about non-mutual offensive use of collateral estoppel, and we all know that that's just kind of a quagmire, right? But certainly, I guess my point is we have jurisdiction to decide the questions with regard to the parties that are properly before us. I think that's correct. I think you certainly have jurisdiction to decide the questions as between the parties that are before us and the counties that directly injured them. Now, you could talk about juridical link and whether, in fact, there is an active case or controversy between these six plaintiffs, actually between these plaintiffs and the six counties that directly injured them as opposed to the 66 other counties in the state of Wisconsin and the city of Milwaukee. I guess if you wanted to overturn the juridical link doctrine and say it doesn't apply here, there is no active case or controversy between these plaintiffs and all those other counties in the city of Milwaukee, yeah. I mean, I would say that's a jurisdictional problem as to those parties, but there is an active case or controversy. There is subject matter jurisdiction right now between these plaintiffs and at least six counties. Our point is the case needs to be dismissed because they needed to pursue it against the counties under Section 1983. They can't avoid 1983 by just suing directly under the Constitution. And regardless, even if they can sue directly under the Constitution, Benamin is binding precedent on the question of the applicable statute of limitations. Well, let's talk about that. Work with me on the time bar issue because I take the district court saying, you know, it could be the date the county takes the property. It could be the date that the property is sold. Let's assume it's the date the property is sold. When we look at the most recent sale here, that happened four months before plaintiffs filed their action, okay? But how would a homeowner whose property has been taken know that there was a surplus that they weren't given until not only after the sale, but I don't know if it's a week after the sale, two weeks after the sale, a day after the sale, when the county does the math and takes out the taxes it's owed plus the fees and costs. We see in the record there's fees and costs. And then somehow notifies the owner. We don't know in the record is this a matter of public record at that time. Do they need a letter from the county? So what if it's that date, which we don't see the district court consider at all? So, Judge Jackson, excuse me, I have two points. One, I just want to clear up an issue with respect to the facts. The last sale here did not occur four months prior to the plaintiffs initiating this case. I think the last sale here occurred, I want to say, in 2021, but I'm going strictly by memory here. I think the statute of limitations expired a few months before the plaintiffs initiated this case. I meant four years. Oh, four years. I'm sorry. I just wanted to make sure that that was clear. To your question about how would they know, I think here we need to talk about what the Supreme Court held in Tyler v. Hennepin County. And our read of that case is the taking of a home and the sale of a home whose value exceeds the tax debt. And then you look to surplus proceeds as the just compensation for that taking. And I think here, if you look at the plaintiff's allegations, these really weren't close calls in terms of the value of their property versus the underlying tax debt. So, I mean, if the question is, did they know they were injured under the Tyler v. Hennepin County theory that you can't take a property exceeding the value of the tax debt to satisfy that tax debt? I think they were. And I think they would have known they were because if you look at their own allegations, they're going to find the examples, obviously, where the value of the property greatly exceeded the tax debt of the particular property owner. And those are the plaintiffs they have in this case. So if you have a $300,000 property, for example, and I'm just using numbers, a $300,000 property and you have a $15,000 tax debt, and the government takes that property and doesn't compensate you for that excess value, I would think a reasonable person in that situation would know they've been injured under the takings theory of Tyler v. Hennepin County. I understand what point you're making. Does the owner know how much the property is sold for that the county was able to sell the property for? Is that important? Because that obviously fluctuates, or you're just saying it's necessarily in all these cases, it's just so far and above the tax debt. An owner doesn't need to know many more facts. I would say certainly with respect to these plaintiffs, if the concern is whether or not they knew that they were being injured under the Tyler v. Hennepin theory, these plaintiffs with the allegations in this case, I don't think it's even questionable. As to whether or not they would have known how much the property sold for, I don't know off the top of my head sitting here today whether that was a matter of public record. I would say they certainly could have submitted public records requests at the time and would have known. Wisconsin counties and the city of Milwaukee are subject to the public records law. Would you view this, should we view the statute of limitations question differently if there's a plaintiff that, say, the house is worth $300 and the tax debt is $290 and somehow it gets sold for $400? I don't think I would, Your Honor. I think that's because they could submit public records requests. They could find out what the property sold for at the time. And how long does that process take? And at what point do they submit that? And then for accrual date, should we fairly wait until that public records request is processed? How long does it take? I think, generally speaking, when you talk about accrual dates for purposes of statute of limitations under the discovery rule, you're looking at whether or not an individual has enough information that they would reasonably know that they've been injured. I'm paraphrasing. I don't have the exact quotes for how this court applies the discovery rule, but that's what we're talking about right now is we're talking about the discovery rule. Okay, well, let me ask you this. If we disagree with you on this time bar question, what should we do? And what happens with the state case? The same question I asked Mr. Zimmer. So if you hold that their claims are timely against the counties, what should happen? I think it should be remanded to the district court for further proceedings. And then I would leave it to the district court at that point, how the district court wants to handle going forward with this case as opposed to the current state litigation. I mean, I think at this point, and I would need to look into this, but certainly we removed this entire case. The only reason why the state claims are in front of a state court right now is because the district court declined to exercise supplemental jurisdiction over those claims after it dismissed the federal claim. If this court reverses the district court on its dismissal of the federal claim, I would need to look into the procedural aspects of that. Certainly to the extent we can, we would want this case being litigated at the same time in front of the same forum, which I think at that point would be the federal court because you would have a federal question, and you would have claims over which the federal court could exercise supplemental jurisdiction. But I can't tell you right now, sitting here today, how the procedure works when you've dismissed a federal claim, state claims are sent back down to the state court for declining supplemental jurisdiction, and then there's a reversal. And there's been no stay whatsoever in state court while this case is on appeal. And neither party asked for that. That's correct. In state court, a motion to dismiss has been briefed. It's been argued, and we're awaiting a decision. Unless there are any further questions. Can you remind me, if you have it, if you know, what is the least amount of difference between the sales price and the taxes owed? I do not know off the top of my head, Judge Lee. I mean, obviously, that would be in the allegations in the complaint. Okay. Thank you. All right. Thank you. All right. Mr. Johnson-Karp. Good morning, Your Honors. May it please the Court. The state of Wisconsin joins in the arguments presented by the counties in support of dismissal on the basis of the statute of limitations. I'm here today, however, to address two additional grounds on which dismissal as to the state would have been proper, and that is failure to state a claim against the state and sovereign immunity. And I'd start with failure to state a claim because there are at least three ways that the complaint here failed to state a claim against the state of Wisconsin. And the first, most broadly, is that this concept of takings that the plaintiff appellants are using against this state, this sort of derivative takings theory, just doesn't exist in case law. So Griggs v. Allegheny County makes very clear that you don't get this sort of dual taker type of theory, and that's exactly what we see here in plaintiff's claim against the state. They're saying that the state enacted laws, the state is sort of the superior governmental entity, and therefore is derivatively liable for the county's actions. And that just can't square with Griggs. And I think as a doctrinal matter, their complaint fails on that reason. So the funds that were collected from the sale to excess surplus funds, none of it went to the state as part of that transaction. So that actually gets to the second reason their complaint fails to state a claim, which is that the way that the statutes work in Wisconsin just doesn't make the state a co-taker. What we have here with the statutes that they cite, Wisconsin Statute 70.60, it talks about calculating and collecting the, quote, state tax chargeable. And that's just a procedure by which taxes are paid to the state. And there's no sort of joint role that the state plays through those tax apportionment statutes. That's just saying to the counties, here's how you calculate and apportion taxes for property in the county. Because generally, not with regard to a particular transaction. Right. So all property in the county is subject to taxes. And when the county is the owner, the county pays some state taxes. Counsel, if the case goes back to state court and the state offers a sovereign immunity affirmative defense or sovereign immunity defense and the state court grants it, would that preclude plaintiff from bringing a federal takings claim later on, saying that the state procedures are not available? Well, I think it's important to distinguish here between sort of sovereign immunity in federal court, which is determined by the availability, as Your Honor was discussing earlier. And so the fact that they can go to state court and bring these state claims that we maintain very likely, hopefully certain to fail, that availability is the determinative question for purposes of sovereign immunity in federal court. That's, I think, what this court said in Gerlach, that as long as you can at least plead the claim in state court, which we maintain under Wisconsin Statute 3210, they could bring a claim against a state entity. They haven't done that, but it's available. And then sort of the backup there is, as counsel for the other side discussed, the Wisconsin Constitutional Takings Clause. But the state would assert sovereign immunity against that claim, yes? The state as the state, yes. So they can't sue in state court, they can't sue in federal court, so how do they vindicate their Fifth Amendment rights? So the state has created a procedure by which state entities can be, by which a takings claim can proceed. But just not the state? Not the state, qua state. So what if it was the state that did this? Then they would just be out of luck? So I think that gets to the question of de Villiers, which is we don't need to answer that question because there is Wisconsin Statute 3210 by which a state agency is empowered, state agencies that are empowered to take can be joined in an inverse condemnation action. Thank you, Your Honors. Thank you. Mr. Zimmer, we'll give you two minutes. Thank you, Your Honor. The state relies on an inverse condemnation action being available under Wisconsin Statute 3210. That action by its definitions only applies to real property interests. That's not what we have here. We're seeking recovery of taken surplus funds, which is money, which is personal property. There's no way for these plaintiffs to have been expected when faced with foreclosure of their homes to say, no, wait a minute, we're filing a condemnation action, the result of which is we now do a condemnation instead. There is already a state court procedure here, which was the former statute 75.36, the one that said that the counties are to take the properties and keep the surplus funds. It would not have made any sense to try to file under 32.10, and the argument that that was available is completely without merit. Ultimately, the state mandated that the counties do this. The state's statutes state, and we quote this in our brief, that the deeds are to be made, quote, on behalf of the state and in the name of the state. So the state is directing these counties to foreclose these properties and not permitting the counties any discretion whatsoever to return the surplus proceeds. The counties have to do this, and they have to keep the surplus proceeds. And there is an exception to the state's argument, which we quote in our brief, that where the superior entity like a state is mandating and coercively asking its agent to conduct the takings, that principle here the state can also be held liable. Ultimately, the state did receive a cut of the proceeds just as a matter of the tax statutes requiring the counties to pay money up to the state. I see my red light is on. I did have one other point, if you don't mind. You may conclude. On the accrual of the 1983 statute of limitations, I think the real concern here is, for example, Mr. Scarban, the plaintiff who had over $400,000 taken, had he tried to file an action under 1983, within three years of the generation of his surplus funds, he would have been denied by the courts because the Ritter v. Ross case, there was a Seventh Circuit case and a Wisconsin case, both said that this exact same claim could not proceed. And we actually have an example of that in the Jensen v. Kenosha case, where as recently as 2022, the Wisconsin Court of Appeals rejected that claim outright. And so to ask any of these plaintiffs who have tried to sue earlier and say, well, you know, you just had to do it earlier because Ms. Tyler could do it in the Eighth Circuit is completely unfair because we have an example from Jensen that shows, no, they would have failed. It wasn't until the Tyler case came out that it was clear that these plaintiffs, under Wisconsin state law, had a property interest in these surplus proceeds. Thank you. Thank you, Mr. Zimmer. Thank you to all the parties. We will take the case under advisement.